# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| JOY A. BROOKINS, o/b/o ALB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 13-00130-N |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Joy A. Brookins filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that she was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-83c, on behalf of her daughter, A.L.B., a minor child (Tr. 26-36). Pursuant to the consent of the parties (doc. 26), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. *See* Doc. 27. The parties' joint motion to waive oral arguments (doc. 25) was granted on February 26, 2013 (doc. 28). Upon consideration of the administrative record (doc. 14), and the parties' respective briefs (docs. 16 and 22), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 28 ("An appeal from a judgment entered by a Magistrate
(Continued)

I.   Procedural History.

Plaintiff, Joy A. Brookins, filed an application for SSI benefits on October 9, 2009, on behalf of her daughter, A.L.B., claiming an onset of disability beginning April 1, 2008, due to lupus and rheumatoid arthritis (Tr. 29, 83-85, 112).  The application was denied on December 3, 2009 (Tr. 52-56).  On March 25, 2010, plaintiff timely requested (Tr. 58-60) a hearing before an Administrative Law Judge ("ALJ").[2]  A hearing was held on June 1, 2011 (Tr. 39-51).  The ALJ issued an unfavorable decision on June 7, 2011 (Tr. 23-38).  Plaintiff requested a review by the Appeals Council, which was denied on January 25, 2012 (Tr. 16-18); thereby making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 422.210(a) (2012)[3].  Plaintiff has exhausted all her administrative remedies and this case is ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).  The Appeals Council granted additional time to file a civil action on February 21, 2013. (Tr. 1-2).  This appeal followed.

---

Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").

[2] Plaintiff's application was processed pursuant to 20 C.F.R. § 416.1406(b)(4), whereby after the initial determination, the reconsideration step in the administrative review process was eliminated, and the claimant could immediately request an administrative hearing. All references to the Code of Federal Regulations (C.F.R.) are to the 2013 edition.

[3] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.  Also, all references are to Part 404 of the regulations, which addresses claims under Title II of the Act. All of the cited regulations have parallel citations in Part 416 of the regulations, which addresses claims under Title XVI of the Act.

II.     Issue on Appeal.

Whether the ALJ erred by failing to order additional treatment records from A.L.B.'s treating physician in order to fully develop the record?

III.    Standard of Review.

   A.   Scope of Judicial Review.

In reviewing claims brought under the Social Security Act, including those involving benefits for an individual under the age of 18, such as this one, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2001); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986); *see also* Davison v. Astrue, 370 Fed.Appx. 995, 996 (11th Cir. Apr. 1, 2010) (*per curiam*) (*citing* Dyer v. Bernhart, 395 F.3d 1206, 1210 (11th Cir. 2005)). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *See* Richardson v. Perales, 402 U.S. 389, 401 (1971); Crawford, 363 F.3d at

1158; Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence "is more than a scintilla, but less than a preponderance," Dyer, 395 F.3d at 1210. "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Davison, 370 Fed.Appx. at 996, *quoting* Crawford, 363 F.3d at 1158-59.

In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, *1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

B.     Standard Applicable to Childhood Disability.

The Personal Responsibility and Work Opportunity Act of 1996 became effective on August 22, 1996. *See* Pub.L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). This legislation defined childhood disability as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(C)(i) (1997). The regulations state that an "impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d).

The regulations set forth a three-step sequential evaluation process that applies to a childhood disability determination:

> We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a). At step one, plaintiff's age and work activity are identified. At step two, the impairments are identified. A severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). At step three, if plaintiff has a severe impairment, then plaintiff must establish that his or her impairment or combination of impairments meets or medically equals in severity and duration, an impairment listed in the Listings of Impairments (the Listings). 20 C.F.R. Pt. 404, Subpt P, App. 1. If not, then the Commissioner must determine whether plaintiff's impairments

5

or combination of impairments functionally equal the criteria for a Listing. 20 C.F.R. §416.926a(a)("If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By 'functionally equal the listings,' we mean that your impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain, as explained in this section."). The agency considers how a child functions in six domains:

(1) Acquiring and using information;
(2) Attending and completing tasks;
(3) Interacting and relating with others;
(4) Moving about and manipulating objects;
(5) Caring for yourself; and
(6) Health and physical well-being.

20 C.F.R. §416.926a(b)(1). If plaintiff has an extreme limitation in one domain or marked limitation in two domains, a finding of functional equivalence will be made. 20 C.F.R. § 416.926a(d),(e),(f).[4] An extreme limitation of function occurs when the impairment "interferes very seriously with [plaintiff's] ability to independently initiate, sustain or complete activities". 20 C.F.R. § 416.926(e)(3)(i). This limitation may occur whether the impairment limits one activity or the cumulative effect of plaintiff's impairments limit several activities, and is given to the "worst limitations." *Id*. Also, the regulations state that an extreme limitation is "the equivalent of the functioning we would

---

[4] The regulation sets forth the methods for using each domain to evaluate functional equivalence to a listing. 20 C.F.R. § 416.926a(f)-(l).

expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.[5]

A marked limitation of function occurs when the impairment "interferes seriously with [plaintiff's] ability to independently initiate, sustain or complete activities". 20 C.F.R. § 416.926(e)(2)(i). This limitation may occur whether the impairment limits one activity or the cumulative effect of plaintiff's impairments limit several activities. *Id*. Also, the regulations state that a marked limitation is "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.[6]

### C. Duty to Develop a Full and Fair Record.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Coven v. Commissioner of Social Security, 384 Fed.Appx. 949, 951 (11th Cir. 2010), *citing* Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "However, if the right to counsel has not been waived, the ALJ is under a 'special duty' to develop a full and fair record by conscientiously probing into all relevant facts." *Id*., *citing*, Brown v. Shalala, 44 F.3d 931, 934–35 (11th Cir.

---

[5] The regulations further discuss this standard in terms of functioning according to chronological age, the use of standardized test scores to measure functioning in a domain, and for the sixth domain of functioning, health and physical well-being, the frequency of exacerbation of the impairment. 20 C.F.R. § 416.926(e)(2)(i)-(iv). Additionally, 20 C.F.R. § 416.926(e)(4) explains the method for consideration of standardized test scores.

[6] The regulations further discuss this standard in terms of functioning according to chronological age, the use of standardized test scores to measure functioning in a domain, and for the sixth domain of functioning, health and physical well-being, the frequency of exacerbation of the impairment. 20 C.F.R. § 416.926(e)(2)(i)-(iv). Additionally, 20 C.F.R. § 416.926(e)(4) explains the method for consideration of standardized test scores.

1995). "This special duty 'requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel,' but not that 'the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ'." *Id.* (internal quotation marks omitted). "Regardless of whether the claimant has waived her right to representation, 'there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record'." *Id.*; *see also* Kelley v. Heckler, 761 F.2d 1538, 1540 n. 2 (11th Cir. 1985) (noting that "a more specific showing of prejudice" is required when the right to counsel has not been waived). In addition, the ALJ's failure to develop a full and fair record "only necessitates a remand if 'the record reveals evidentiary gaps which result in unfairness or clear prejudice'." Childers v. Social Sec. Admin. Com'r., 521 Fed.Appx. 809, 816 (11th Cir. 2013), quoting Brown, 44 F.3d at 935.

IV. Statement of Relevant Facts.

A. Relevant Medical and Nonmedical Evidence before the ALJ.

According to the medical notes of Sarah Joiner, M.D., regarding A.L.B's April office visit, she had recently been diagnosed with lupus, but steroids were not needed and she was to continue with naproxen,[7] which had resolved her arthritis (Tr. 160).

---

[7] Naproxen is used to treat pain or inflammation caused, *inter alia*, by arthritis. www.drugs.com/naproxen.html

In a February 2009 letter to Dr. Joiner, Loran Clement, M.D., stated that A.L.B.'s recent flare-up of lupus had completely resolved with prednisone (Tr. 168). Dr. Clement recommended that A.L.B. taper off prednisone and continue with naproxen (Tr. 168). Dr. Clement also suggested that A.L.B. return for follow-ups every 2-4 months (Tr. 168).

Also in February 2009, A.L.B. underwent debulking surgery for localized gigantism of her left big toe (Tr. 152, 169). At a May 2009 follow-up with the surgeon, Prasit Nimityongskul, M.D., A.L.B. had no complaints, and Dr. Nimityongskul reported that x-rays looked very good with no obvious deformities (Tr. 133, 136). At a May 2009 follow-up office visit with Dr. Joiner, A.L.B. had no pain with walking (Tr. 170).

At a June 2009 follow-up office visit, Dr. Joiner reported that A.L.B. was doing well with no complaints (Tr. 172). Dr. Joiner also noted that A.L.B.'s lupus was controlled and that she was to continue with naproxen (Tr. 172).

In an October 2009 "function report," Plaintiff stated that A.L.B. was not limited in her ability to communicate, learn, or behave appropriately (Tr. 95). Plaintiff also reported that A.L.B.'s ability to care for her personal needs was not affected, and she was able to pay attention and stick with a task (Tr. 99-100).

Peter Bertucci, M.D., a State agency medical consultant, reviewed the record and completed a childhood disability evaluation form in December 2009, indicating that A.L.B.'s status-post left great toe gigantism repair, and lupus were severe impairments, but did not meet, medically equal, or functionally equal the listings (Tr. 215). Dr. Bertucci found that A.L.B. had no limitation in acquiring and using information, no

9

limitation in attending and completing tasks, no limitation in interacting and relating with others, less than marked limitation in moving about and manipulating objects, no limitation in caring for herself, and less than marked limitation in health and physical well-being (Tr. 217-18).

B. Plaintiff's Testimony.

At the commencement of the June 1, 2011 hearing, Joy Brookins waived her right, and her daughter's right, to counsel and declined the ALJ's offer of a continuance to allow time to obtain counsel (Tr. 42-43). After having been sworn, Brookins testified that at the time of her daughter's onset of disability in April 2008, she could not walk for a month because of a swollen leg, but she was able to walk at the time of the hearing (Tr. 47). Brookins also testified that A.L.B. was finishing the eighth grade in regular classes (Tr. 47), had never failed or repeated a grade and received A's, B's, and C's (Tr. 47-48). She also stated that A.L.B. could stay in the sun for only 15 minutes, which eliminated her from doing anything outside, but she had no problems doing things inside (Tr. 48). A.L.B.'s doctors told Brookins that A.L.B. would always have bone and joint problems and that her body would "attack itself" (Tr. 49). However, this condition did not at this time keep A.L.B. from doing chores, including washing dishes, and cleaning her room (Tr. 49). The evidence also establishes that A.L.B. got along well with her brother (Tr. 50).

C.  The ALJ's Decision.

The ALJ found that A.L.B. was born in 1997 and was a school-age child both on the date of application, October 2, 2009, and at the time of the ALJ's decision, June 7, 2011 (Tr. 29, 36). The ALJ also found that A.L.B. had never engaged in substantial gainful activity and had the following "severe" impairments: lupus and rheumatoid arthritis (Tr. 29). The ALJ further found that A.L.B. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, app. 1 (Tr. 29). The ALJ also considered the issue of functional equivalence by evaluating A.L.B.'s performance in the six domains of functioning and made the following findings:

- Acquiring and using information –          No limitation
- Attending and completing tasks –           No limitation
- Interacting and relating with others –     No limitation
- Moving about and manipulating objects –    Marked limitation
- Caring for yourself –                      No limitation
- Health and physical well-being –           Less than marked
  limitation

(Tr. 31-35). Because A.L.B. did not have "marked" limitations in two domains or an "extreme" limitation in one domain, the ALJ found that her impairments did not functionally equal a listing (Tr. 36). The ALJ concluded, therefore, that A.L.B. was not disabled under the Act (Tr. 36).

V.  Analysis.

The sole issue in this case is whether the ALJ erred by failing to order medical records for the nearly 17 month time period from November 26, 2009 to June 1, 2011.

11

Brookins, who appeared *pro se* at the hearing, argues, in sum, that "[a] full picture of how [A.L.B.] was limited both at the time of the hearing and for the preceding year and a half required review of these additional documents." (Doc. 16 at 3).

In general, "the ALJ has a basic obligation to develop a full and fair record." Coven, *supra* 384 Fed.Appx. at 951. When a claimant appears *pro se,* "the ALJ is under a 'special duty' to develop a full and fair record by conscientiously probing into all relevant facts." *Id*. The primary purpose of this special duty is to insure that the record "shows that the claimant was not prejudiced by lack of counsel." *Id.* "Regardless of whether the claimant has waived her right to representation, 'there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record'." *Id*.; *see also* Kelley, *supra,*761 F.2d at 1540 n. 2 (noting that "a more specific showing of prejudice" is required when the right to counsel has not been waived).

In this case, Brookins not only waived her right, and her daughter's right, to counsel, but asked whether she needed "any records from 2010 or 2011" which were not in the file and was told by the ALJ: "I don't know about that, ma'am, all I know is that I'm telling you you can get a continuous [sic] if you want for the purpose of getting a lawyer for your daughter" (Tr. 43). The continuance would have allowed Brookins to obtain counsel and the medical records, or present an argument that the medical records were crucial to her daughter's case. Brookins declined the invitation to continue the case and advised the ALJ that she wanted to "go ahead and proceed." (Tr. 43). Brookins has

12

proffered no evidence that A.L.B. was prejudiced by the absence of these medical records. Instead, Brookins argues only that the records should have been obtained by the ALJ even in the absence of any evidence that they would change the outcome of this case. *See* Coven, 384 Fed.Appx. at 952 (upholding ALJ's decision "because the ALJ thoroughly inquired into the circumstances surrounding Coven's alleged suicide attempt, the incident was unrelated to Coven's claimed inability to work, and the record contained sufficient information for the ALJ to make an informed decision.").

In Newberger v. Commissioner of Social Sec. Admin., 293 Fed.Appx. 710, 713 (11th Cir. 2008), the Eleventh Circuit held:

> Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." Kelley, 761 F.2d at 1540. "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Graham, 129 F.3d at 1423 (quoting Brown, 44 F.3d at 935). There is no showing of prejudice when a claimant makes no allegation that the record was incomplete or inadequate or that the ALJ's opinion was not thorough. See Kelley, 761 F.2d at 1540.

293 Fed.Appx. at 713, *citing* Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985); Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Brown v. Shalala, 44 F.3d 931, 935 (11th Cir.1995). More recently, the Eleventh Circuit has held:

> "Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." Ellison [v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)]. Additionally, a claimant must demonstrate that she was prejudiced by the ALJ's failure to develop the record before a due process violation will justify remand. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997). In making this determination, we are "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id.

Smith v. Commissioner of Social Sec., 501 Fed.Appx. 875, 878 (11th Cir. 2012). *See also*, Pena v. Commissioner of Social Sec., 489 Fed.Appx. 401, 403 (11th Cir. 2012)("We conclude that Pena has not demonstrated that she was prejudiced because she has not shown there were any unfair or prejudicial evidentiary gaps in the record before the ALJ."). Although Brookins argues that the record is incomplete, she has failed to demonstrate that it is inadequate or that she has been prejudiced by any absence in the record.

In Engram v. Colvin, 2013 WL 4442023, *7 (M.D. Ala. August 15, 2013), in which the Court held:

> Under Johnson [v. Barnhardt, 138 Fed. Appx. 266 (11th Cir. 2005)], an ALJ is only required to "seek additional information or recontact" the treating physician if, "after weighing the evidence, the Commissioner cannot reach a determination" because the evidence contains unresolvable conflicts or inconsistencies due to an underdeveloped record. Johnson, 138 Fed. Appx. at 270; *see also* 20 C.F.R. § 404.1520b(c); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997)("[T]he ALJ has a basic obligation to develop a full and fair record."). *But see* 20 C.F.R. § 404.1520b(c) (eff. March 26, 2012, see 77 F .R. 10651–01) (providing that the Commissioner "may" choose to resolve an inconsistency by recontacting a treating physician). When, as here, the record is already sufficiently developed for the ALJ to resolve conflicting or inconsistent evidence, the ALJ is entitled to weigh the evidence "and reach [a] decision." Johnson, 138 Fed. Appx. at 270; 20 C.F.R. § 404.1520b.

2013 WL 4442023 at *7. Brookins does not assert that there exist any inconsistencies in this record. She testified that, although her daughter could not walk for a month in April 2008 because of a swollen leg, she was able to walk at the time of the hearing (Tr. 47). Brookins also testified that her daughter was finishing the eighth grade in regular classes (Tr. 47), had never failed or repeated a grade and received A's, B's, and C's (Tr. 47-48). The evidence also establishes that A.L.B. got along well with her brother (Tr. 50).

The only limitation asserted at the hearing was A.L.B.'s inability to stay in the sun for more than 15 minutes, which eliminated her from doing anything outside (Tr. 48). A.L.B.'s doctors told Brookins that A.L.B. would always have bone and joint problems and that her body would "attack itself" (Tr. 49). However, A.L.B. had no problems doing things inside (Tr. 48) and this condition did not keep A.L.B. from doing chores, including washing dishes, and cleaning her room (Tr. 49). Brookins has not established that any medical record that was not before either the ALJ or the Appeals Council contained any evidence inconsistent with the evidence in the record at the time of their decisions. Consequently, Brookins has failed to establish that the subject medical records would have mandated a change in the outcome and that she was, therefore, prejudiced by their absence. The ALJ's decision, and that of the Appeals Council, is therefore due to be affirmed.

CONCLUSION.

For the reasons stated above, the Court concludes and it is therefore **ORDERED** that the decision of the Commissioner denying plaintiff's application on behalf of her minor daughter for SSI benefits is supported by substantial evidence and is due to be and is hereby **AFFIRMED**.

**DONE** this   24th   day of January, 2014.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**